# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MYATT, Minors.

UNPUBLISHED
August 22, 2017

No. 335539
Oakland Circuit Court
Family Division
LC No. 2016-838706-NA

Before: SAAD, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

Respondent, A. Myatt, appeals as of right the trial court's order terminating his parental rights to AGM and JLM pursuant to MCL 712A.19b(3)(b)(*ii*). Because we conclude that there are no errors warranting relief, we affirm.

Respondent and his then-girlfriend Lindsay began dating while they were in high school. Before they graduated, Lindsay became pregnant with their daughter, AGM. After the child's birth in March 2014, the young parents continued to live with their respective parents, or in the case of respondent, his grandparents. Eventually, however, they moved into the home of respondent's grandparents, married, and then Lindsay gave birth to their son, JLM, in October 2015. When JLM was approximately two months old, he stopped breathing and was rushed to the emergency room. At that time, it was discovered that he was suffering from injuries indicative of non-accidental physical abuse. Neither parent was able to provide an explanation for these severe injuries. Shortly thereafter, a petition was filed requesting termination of both parents' parental rights at the initial dispositional hearing. With the agreement of the parties, the court held a combined adjudication and statutory grounds hearing. Two days into these proceedings, the petition was amended and authorized to reflect that petitioner was only requesting termination of respondent's parental rights. With respect to Lindsay, petitioner now intended to seek only a temporary wardship.[1] At the conclusion of the hearing, the court determined that it could take jurisdiction over the two children. It then found that a statutory ground for termination of respondent's parental rights pursuant to MCL 712A.19b(3)(b)(*ii*) had

---

[1] Shortly thereafter, Lindsay entered a plea and the case against her proceeded to disposition. Lindsay was ordered to comply with a treatment plan. At the time respondent's termination hearing concluded, Lindsay was actively participating in services geared toward reunification with her children.

been established by clear and convincing evidence. At a best-interest hearing held three months later, the court concluded that termination of respondent's parental rights was in the children's best interests (under a preponderance of the evidence). Accordingly, the court entered an order terminating respondent's parental rights to AGM and JLM. This appeal followed.

Respondent first argues that the trial court clearly erred in assuming jurisdiction over the minor children.[2] We disagree. This Court reviews a trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact. *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). A trial court's finding of fact is "clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 296-297.

To properly exercise jurisdiction, the court must find by a preponderance of the evidence that a statutory basis for jurisdiction exists. *In re BZ*, 264 Mich App at 295. In this case, the trial court found grounds for jurisdiction under MCL 712A.2(b)(1) and (2), which provide:

> (b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:
>
> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. As used in this sub-subdivision:
>
> * * *
>
> (B) "Without proper custody or guardianship" does not mean a parent has placed the juvenile with another person who is legally responsible for the care and maintenance of the juvenile and who is able to and does provide the juvenile with proper care and maintenance.

---

[2] As a preliminary matter, concerned that he might be accused of collaterally attacking the court's finding of jurisdiction, respondent argues that the court erred in combining the adjudication and statutory ground phases of the proceeding. He contends that such procedure deprived him of the right to directly appeal the court's order of adjudication. We note, however, that respondent stipulated to proceeding in this fashion. In any event, respondent's concern is unfounded. "Ordinarily, an adjudication cannot be collaterally attacked following an order terminating parental rights." *In re SLH*, 277 Mich App 662, 668; 747 NW2d 547 (2008). As in the instant case, however, when termination occurs "at the initial disposition as a result of a request for termination contained in the original, or amended, petition for jurisdiction," a challenge to the adjudication "is direct and not collateral. . . ." *Id*. Thus, respondent is not foreclosed from challenging the trial court's exercise of jurisdiction in this appeal.

> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.

After reviewing the record, we conclude that the trial court did not err when it assumed jurisdiction pursuant to the foregoing provisions.

The evidence overwhelmingly established that JLM sustained severe physical injuries, including several fractured ribs, a fractured clavicle, two brain bleeds, and retinal hemorrhaging. These injuries were, on more than one occasion, likened to the type of injury a child would sustain if ejected from a motor vehicle during an accident, in a fall from several stories, or if severely shaken. The testimony of JLM's treating physicians refutes any suggestion that JLM's injuries were self-inflicted, accidental, or the result of birth trauma. Indeed, the physicians testified unequivocally that the injuries were significant, non-accidental trauma, i.e., child abuse.

Further, the evidence was more than sufficient for the court to conclude that JLM was physically abused by either or both of his parents, or that one parent failed to protect the child. Lindsay was the primary caregiver of respondent's two children. However, on or about December 1, 2015, JLM was left in respondent's care while Lindsay attended a job interview. When Lindsay returned from her interview, she found JLM with a fat lip. Respondent claimed that the injury occurred when the then six-week-old JLM "head-butted" him. After this initial injury, JLM's disposition deteriorated. He was irritable, constipated, and would not nurse. When JLM did eat, he would promptly spit up or projectile vomit. Lindsay took JLM to the pediatrician on December 8, 2015. JLM's doctor ordered an abdominal x-ray. Although the radiologist who read the x-ray taken on that day failed to detect the presence of any abnormality, in retrospect, it was determined that JLM was suffering from several rib fractures.

The most critical events occurred on the morning of December 14, 2015, when the children were, once again, left alone in respondent's care while Lindsay went to work. At that time, JLM stopped breathing and was taken by ambulance to the hospital. Once there, JLM was diagnosed with the severe injuries described earlier. JLM's treating physicians determined, based on the healing pattern or lack thereof, that the rib fractures were two to three weeks old; the clavicle fracture, which was fresh, could have occurred on that day or within the previous week; one of the brain bleeds occurred several weeks to one month earlier; and the other brain bleed was between several hours to several days old.

There was also testimony that respondent was violent, verbally abusive, and short-tempered. Lindsay described an incident in December 2014 where respondent broke a plate over his grandmother's head. She further testified that respondent made threats toward her and referenced a gun, and that when Lindsay informed respondent that she was leaving him, he slashed her tire while she was at work. The trial court also noted that respondent's two-year-old child, AGM, was frightened of respondent and reluctant to interact with him.

Considering the foregoing, a preponderance of the evidence supported the trial court's finding that respondent failed to provide, when able to do so, proper care and custody for his children and that the children were subject to a substantial risk of harm. Similarly, a preponderance of the evidence supported a finding that the home environment, by reason of

neglect, cruelty, drunkenness, criminality, or depravity on the part of respondent was an unfit place for the children to live in. Accordingly, the trial court did not err in asserting jurisdiction over the children pursuant to MCL 712A.2(b)(1) and (2).

Next, respondent argues that the trial court erred when it found that a statutory ground for termination was established by clear and convincing evidence. We disagree. In order to terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been established by clear and convincing evidence. *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000). This Court reviews the trial court's findings under the clearly erroneous standard. MCR 3.977(K). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been committed. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

Respondent's parental rights were terminated pursuant to MCL 712A.19b(3)(b)(*ii*),[3] which provides:

> (b) The child or sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:
>
> * * *
>
> (*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

After reviewing the record, we conclude that the trial court did not err when it found that this statutory ground for termination was established by clear and convincing evidence.

As discussed earlier, the evidence overwhelmingly established that JLM sustained severe physical injuries, including multiple fractures, two brain bleeds, and retinal hemorrhaging. The brain injuries required that fluid be removed from the infant's skull on two occasions. As a further complication of the injuries, JLM developed a seizure disorder that his physicians continue to treat with anti-seizure medication. Further, there was overwhelming evidence that JLM's injuries were caused by non-accidental trauma. The overwhelming and credible testimony of JLM's treating physicians refutes any suggestion that the child's injuries could have been self-inflicted, accidental, or related to birth trauma.

Further, the evidence was more than sufficient for the court to conclude that JLM was physically abused by either or both of his parents, or that one parent failed to protect the child. It was not necessary for the evidence to conclusively establish which parent perpetrated the

---

[3] Petitioner also requested termination of respondents' parental rights under MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*iii*). Contrary to respondent's brief on appeal, the trial court did not terminate respondents' parental rights under any of these alternative grounds.

physical abuse. In *In re Ellis*, 294 Mich App 30, 35-36; 817 NW2d 111 (2011), this Court held that "termination of parental rights under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (j) and (k)(*iii*) is permissible even in the absence of definitive evidence regarding the identity of the perpetrator when the evidence does show that the respondent or respondents must have either caused or failed to prevent the child's injuries." This Court reasoned that "when there is severe injury to an infant, it does not matter whether respondents committed the abuse at all, because under these circumstances there was clear and convincing evidence that they did not provide proper care." *Id*. at 33-34. Although Lindsay was the primary caregiver, on at least two occasions while in respondent's care, JLM experienced significant events, one life threatening. Given this evidence, the trial court did not clearly err in concluding that respondent failed to protect his child.

The evidence also supports the trial court's finding that the children would suffer from injury or abuse in the foreseeable future if placed in respondent's home. It is undisputed that JLM sustained severe injuries. Respondent could articulate no plausible explanation for these injures. Indeed, he failed to take any responsibility for JLM's injuries, denied any knowledge of the manner in which they were sustained, and persisted in positing implausible explanations for the severe abuse. Because the evidence supported a finding that respondent failed to protect his child and he continued to deny knowledge of the source of the injuries, there existed a reasonable likelihood that the children would suffer further harm in respondent's care.

Accordingly, there was clear and convincing evidence to terminate respondent's parental rights to the two children pursuant to MCL 712A.19b(3)(b)(*ii*).

Finally, respondent challenges the trial court's finding that termination of his parental rights was in the children's best interests. "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of the parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). The court may consider several factors when deciding if termination of parental rights is in a child's best interests, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). The court may also consider psychological evaluations, the child's age, continued involvement in domestic violence, and a parent's history. *In re Jones*, 286 Mich App 126, 131; 777 NW2d 728 (2009).

The trial court did not clearly err in finding that termination of respondent's parental rights was in AGM's and JLM's best interests. JLM suffered severe injuries. Although the trial court admitted that there was "no smoking gun" and that "fingers have been pointed at a number of people as the perpetrator" of the abuse, the evidence established that the timing of the injuries correlated with the periods in which JLM was in respondent's care. At the very least, respondent failed to protect JLM from physical abuse. The evidence further established that respondent continued to deny the manner in which JLM was injured and, instead, created implausible explanations for the injuries. Clearly, the children would continue to be at risk if returned to respondent's care.

Further, any bond between respondent and his children was, as the trial court noted, non-existent or, at best, weak. AGM was just over a year and a half old and JLM was two months old

when they were removed from respondent's care. The testimony supported a finding that AGM was afraid of respondent and reluctant to engage with him. After visits, she would experience nightmares and act out in the days that followed. Even at the time of the termination hearing, AGM still demonstrated that she feared respondent. When a loud car, similar to respondent's car, would drive by, AGM would scream and run to her grandfather's arms. The lack of a significant and meaningful bond between respondent and his children weighs in favor of terminating parental rights.

The opinion of the clinical psychologist, Shannon Conz, who evaluated respondent is also compelling. Conz observed that respondent was stoic and unemotional during the evaluation. She further found that respondent lacked insight into the circumstances surrounding the involvement of Child Protective Services with his family. Conz noted that respondent minimized his role in failing to ensure the safety and well-being of his children, and that he was unable to articulate ways in which he could improve his parenting. These deficits compelled Conz to conclude that it was unlikely that respondent would seek out and internalize information provided in services such as parenting classes and therapy.

At the time of the termination hearing, the children were still in the care of their maternal grandparents. However, Lindsay, the children's mother, had been participating in the treatment plan and actively engaged in her children's care. Reunification with Lindsay continued to be the permanency plan, and failing that, the grandparents had expressed a willingness to plan long term for the children. Even though placement with a relative weighs against termination, and the fact that a child is living with relatives must be considered, a trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests. *In re Olive/Metts*, 297 Mich App at 43. In this case, the trial court acknowledged the relative placement, but still found that termination of respondent's parental rights was in the children's best interests. It noted that this was the best avenue by which the children would be afforded the greatest opportunity to heal from the trauma. Considering this, the trial court did not clearly err when it determined that termination of respondent's parental rights was in the children's best interests, despite the fact that they were in relative placement with their maternal grandparents.

Affirmed.

/s/ Henry William Saad
/s/ Deborah A. Servitto
/s/ Michael F. Gadola